1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RHONDA WHITEROCK FRED,

       Plaintiff,                    CIV. NO. S- 10-0845 JAM GGH PS

       vs.

WASHOE TRIBE OF NEVADA &
CALIFORNIA,

       Defendant.               FINDINGS & RECOMMENDATIONS

_____/

*Introduction and Summary*

        Plaintiff is proceeding pro se in this action, which was referred to the undersigned pursuant to Local Rule 302(c)(21).   As a grandparent of two children associated with the Washoe Tribe, plaintiff seeks custody of her grandchildren despite the previous action of the Washoe Tribal Court and the Inter-Tribal Court of Appeal of Nevada.   Presently pending is defendant's motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim, for failure to exhaust tribal court remedies and for sovereign immunity.

        The interrelationship of federal and tribal courts is a delicate and often complex matter.  This case fits that mold.  While it is clear that a federal court *may* have jurisdiction over a non-Indian's federal claim, Boozer v. Wilder, 381 F.3d 931 (9th Cir. 2004), the parameters of that claim are not clear, i.e., jurisdiction over what.  Nor does plaintiff's complaint make clear what she seeks.  Although alleging at one point that the Washoe tribal court lacked jurisdiction,

1

and that she was denied due process in some manner, plaintiff does not clearly specify her precise claims or ask for any certain relief.  In supplemental briefing on the jurisdictional question (Docket #25), plaintiff indicated that she wished the children returned to her.

The undersigned finds that the court has subject matter jurisdiction over a claim by plaintiff, and that claim may include an attack on the tribal court jurisdiction and any constitutional claims that plaintiff may have, e.g., lack of due process in taking the children from non-Washoe lands, lack of due process in the tribal court, alleged fundamental right of a grandparent to custody over grandchildren in the circumstances of this case.  The undersigned will defer ruling on the validity of any such claims until they are specified with greater particularity and further facts are known.  Likewise, the undersigned will not attempt to define now what remedies may be available.  The undersigned further concludes that plaintiff has exhausted her tribal court remedies.  With respect to sovereign immunity, the court will defer ruling on such a claim until after an amended complaint is filed setting forth with preciseness the nature of plaintiff's claims and appropriate defendants.

*Background*

Plaintiff is a non-enrolled California Pomo Indian who seeks custody of her two minor grandchildren, T.F. and E.F.  The minor T.F. is a member of the Washoe Tribe and E.F. is eligible for membership in the Washoe Tribe.  In November and December 2005, the children were removed from plaintiff's house by the Washoe Tribe's Department of Social Services, where they had been in the custody of their mother, M.F., also a member of the Washoe Tribe, or as plaintiff asserts in her supplemental briefing– *her custody*.  The home that the children were removed from was not within the boundaries of the Washoe Indian County.  However, the children are wards of the Washoe Tribal Court.

Tribal court proceedings commenced, in which plaintiff and the mother

2

1  participated, and the children were eventually placed in the care of their aunt.[1]  On June 18, 2007,

2  plaintiff filed two petitions for habeas corpus with the tribal court seeking custody, which were

3  denied after a hearing on October 16, 2008.  Plaintiff appealed to the Inter-Tribal Court of

4  Appeals of Nevada (ITCAN) which upheld the tribal court's dismissal on January 4, 2010.  The

5  ITCAN denied plaintiff's request for reconsideration on February 18, 2010.

6         Plaintiff filed the instant action on April 9, 2010, alleging that the tribal court

7  usurped its jurisdiction and otherwise denied her due process.

8  _____Subject Matter Jurisdiction_

9         Federal district courts are courts of limited jurisdiction.  United States

10  Constitution Article III, § 1 provides that the judicial power of the United States is vested in the

11  Supreme Court, "and in such inferior Courts as the Congress may from time to time ordain and

12  establish."  Congress therefore confers jurisdiction upon federal district courts, as limited by U.S.

13  Const. Art. III, § 2.  See Ankenbrandt v. Richards, 504 U.S. 689, 697-99, 112 S.Ct. 2206 (1992).

14  Since federal courts are courts of limited jurisdiction, a case presumably lies outside the

15  jurisdiction of the federal courts unless proven otherwise.  Kokkonen v. Guardian Life Ins. Co. of

16  America, 511 U.S. 375, 376-78, 114 S.Ct. 1673 (1994).  Lack of subject matter jurisdiction may

17  be raised at any time by either party or by the court.  See Attorneys Trust v. Videotape Computer

18  Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

19         Congress passed the Indian Child Welfare Act (ICWA) in 1978 in response to a

20  growing concern that Indian children were removed from their homes by state child protection

21  officials at an alarmingly high rate and placed in foster care or adoption settings outside their

22  Indian communities and culture.  See 25 U.S.C. § 1901(4); Mississippi Band of Choctaw Indians

23  v. Holyfield, 490 U.S. 30, 32, 109 S.Ct. 1597 (1989).  "At the heart of ICWA" lies a

24  jurisdictional scheme aimed at ensuring that tribes have a role in adjudicating and participating in

26      [1] It appears that later the children were placed with foster parents.

3

child custody proceedings involving Indian children domiciled both on and off the reservation. Holyfield, 490 U.S. at 36.   Congress noted that states have often failed to recognize the important tribal relations that prevail in Indian communities and families.  25 U.S.C. § 1901(5).

The ICWA provides:

> An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law.  Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a).[2]

Where the children are not domiciled on the reservation, § 1911(b) provides for concurrent jurisdiction between the state and the tribe, but tribal jurisdiction is presumed.  Hollyfield, at 36.

Seemingly, therefore, the Washoe Triabal Court had jurisdiction over the determinations of child custody, if not "exclusive jurisdiction."  Paradoxically, however, such does not mean that plaintiff herein has no ability to seek a remedy in federal court.  There can be federal court jurisdiction if plaintiff was a non-Indian.  Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction.  Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 850-53, 105 S.Ct. 2447 (1985).  In Boozer v. Wilder, 381 F.3d 931, 934 (9th Cir. 2004), an Indian child custody case where the plaintiff father was a non-Indian, the Ninth Circuit held "[b]ecause 'federal law defines the outer boundaries of an Indian tribe's power over non-Indians,' [Nat'l Farmers Union] at 851, 105 S.Ct. 2447, the 'question whether an Indian tribe retains the power to compel a non-Indian ... to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331.'"  Id. at 934; see also Atwood v. Fort Peck Tribal Assiniboine, 513 F.3d 943, 946-47 (9th Cir. 2008) (holding that the there was subject matter

---

[2]Interestingly, the statute expressly references "the State" and is silent as to the United States.

1  jurisdiction pursuant to § 1331 in an Indian child custody case as the domestic relations

2  exception did not apply); but see LaBeau v. Dakota, 815 F.Supp. 1074, 1076 (W.D.Mich. 1993)

3  citing Shelifoe v. Dakota, 966 F.2d 1454, 1992 WL 133065 (6th Cir. 1992) (unpublished

4  disposition); Sandman v. Dakota, 816 F.Supp. 448, 451 (W.D.Mich.1992); Reddogg v.

5  Blackdog, 2008 WL 5435323 at *3 (D. Mont. 2008); Goslin v. Kickapoo Nation Dist. Court,

6  1998 WL 1054223 (D. Kan. 1998).

7           First, the undersigned considers the status of plaintiff as a non-Indian.  In the

8  instant case plaintiff has Indian heritage, but as a Pomo Indian.  Nevertheless she is not an

9  enrolled member of the Pomo Tribe, and has no relationship with the Washoe Tribe.  The

10  undersigned has not found any case law discussing if an Indian tribe can assert jurisdiction over

11  an Indian from a different tribe in an Indian child custody proceeding.  However, given the status

12  of plaintiff as not even an enrolled member of any tribe, the undersigned considers her "non-

13  Indian" for the purpose of this case.

14           In Boozer, the non-Indian father brought an action in federal district court

15  challenging the tribal court's jurisdiction in awarding custody and the circuit held there was

16  jurisdiction.[3]  The Ninth Circuit in Boozer also noted in discussing the facts of the case that the

17  district court had found that the tribal court retained exclusive jurisdiction.  Boozer, at 934.

18  Despite that the tribal court had exclusive jurisdiction, the court still held there was a federal

19  claim for plaintiff to challenge the jurisdiction.  Therefore, that the children are wards of the

20  Washoe Tribe in the instant case, which according to the statute provides "exclusive jurisdiction"

21  to the tribal court for custody matters, is not determinative for this motion to dismiss for lack of

22  subject matter jurisdiction.

23           The issue here concerns whether the "exclusivity" of tribal court jurisdiction is

24  _____

25           [3] While the Ninth Circuit found subject matter jurisdiction in Boozer, the case was
ultimately dismissed for plaintiff's failure to exhaust tribal remedies.  While the plaintiff had
26  filed some motions in tribal court, the case was still pending and being argued in tribal court
while the case was being heard in district court and in the court of appeals.

1   less than that in cases where tribal authorities reach beyond the boundaries of the tribe, seemingly

2   invade a home of a non-tribal member, and take the children residing therein. The undersigned,

3   and evidently the Ninth Circuit, find it difficult to believe that it was the intent of Congress and

4   the ICWA, that an Indian Tribe could act as outlined above, and retain jurisdiction exclusive to

5   *all* other courts–whether or not the child was considered a tribal ward.  An analogous situation

6   would involve state personnel from Nevada, coming to California and spiriting a child from a

7   California household back to Nevada for custody proceedings, and where Nevada would then

8   contend it had "exclusive" jurisdiction over the custody issues involving the child.  While the

9   precise extent of the jurisdiction of the federal courts in this matter has not been clearly defined,

10  at least some of the claims which may be available to plaintiff are set forth in the following

11  section on failure to state a claim.

12          At this point the undersigned takes no position on the legality of what transpired

13  in the Washoe Tribal Court.  The undersigned specifically finds that subject matter jurisdiction

14  exists for some type of claim, and defendant's motion to dismiss for lack of subject matter

15  jurisdiction should therefore be denied.

16          *Failure to State a Claim*

17          In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

18  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

19  it must contain factual allegations sufficient to "raise a right to relief above the speculative

20  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "The

21  pleading must contain something more...than...a statement of facts that merely creates a suspicion

22  [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

23  and Procedure § 1216, pp. 235-36 (3d ed. 2004). "[A] complaint must contain sufficient factual

24  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

25  ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has

26  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6

1  reasonable inference that the defendant is liable for the misconduct alleged." Id.

2         In considering a motion to dismiss, the court must accept as true the allegations of

3  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

4  Ct. 1848 (1976), construe the pleading in the light most favorable to the party opposing the

5  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

6  89 S. Ct. 1843, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that

7  general allegations embrace those specific facts that are necessary to support the claim.'"

8  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798 (1994),

9  quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992).  Moreover,

10  pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v.

11  Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972).

12         Boozer was not clear about the federal claims which would be allowed under

13  federal court jurisdiction.  At page  935 (381 F.3d) the court held: Although "§ 1331

14  encompasses the federal question whether a tribal court has exceeded the lawful limits of its

15  jurisdiction, ...exhaustion is required...'" And: "Because Boozer is non-Indian, § 1331 provides

16  subject matter jurisdiction over his federal common law challenge to the tribal court's

17  jurisdiction to determine his fitness to regain custody of K.W.B." Id.  But such did not appear to

18  be the only claim which could be brought, as at footnote 4 page 936, the court indicated that

19  plaintiff could bring an underlying substantive constitutional claim as well– a fit parent's

20  fundamental right to make decisions about the care and custody of his children, ironically for

21  plaintiff herein, including a refusal to allow the child to visit grandparents.  The Ninth Circuit has

22  also held that the domestic relations exception did not apply when a plaintiff was seeking custody

23  in federal court pursuant to § 1331 in an Indian child custody case.  See Atwood v. Fort Peck

24  Tribal Assiniboine, 513 F.3d 943, 946-47 (9th Cir. 2008).  While the court in Atwood made clear

25  a federal court could take possibly take action, that case was also dismissed for failure to exhaust

26  and did not provide any insight into a possible remedy.

1    The undersigned distills from the above cases that plaintiff may challenge tribal

2    court jurisdiction to hear a federal common law claim, but that challenge to jurisdiction must

3    generally be first heard in tribal court.  If a determination is made there, or later in federal court

4    that tribal court jurisdiction does not exist, the full substantive claim, if otherwise appropriate,

5    may be heard in federal court.

6    Defendant states that plaintiff's case should be dismissed because plaintiff does

7    not simply urge this court to rule on the tribal court's jurisdiction or lack thereof but also for this

8    court to award plaintiff custody of her children and that is not relief that can be granted.

9    Defendant raises a complicated issue.  When the undersigned requested further briefing, the

10   following issue was also presented for the parties to address:

11          Assuming for sake of argument that plaintiff as a non-member Indian could
            challenge the tribal court jurisdiction in federal court, it is not entirely clear what
12          would be the appropriate remedy if this court ruled that the tribal court did not
            have jurisdiction.  The majority of cases involve the federal courts ruling on
13          jurisdiction in disputes between the states and the Indian Tribes.  In this case,
            there has been no action on behalf of the state.  Would this court order the state to
14          begin custody proceedings and an investigation, or would plaintiff automatically
            receive custody of the children without any regard for the best interests of the
15          children, or would custody proceedings occur in this federal court?  Any answer to
            these questions raises another host of questions involving Congressional intent of
16          the ICWA as well as the sovereign power of the tribes and the role of federal
            courts.

17
     April 26, 2011, Order at 3.
18
            Just as the claims are not clearly defined, it is not entirely clear what the remedy
19
     would be if the court were to ultimately rule in plaintiff's favor.  Yet, this uncertainty does not
20
     mean the case should be dismissed at this stage.
21
            However, because the complaint as written is a conglomeration of possible or
22
     uncertain claims, and assuming these Findings and Recommendations are adopted, plaintiff
23
     should be required to amend the complaint to delineate by separate headings the precise claims
24

25

26

1   she desires to bring herein.[4]

2          *Exhaustion of Tribal Court Remedies*

3          Although "§ 1331 encompasses the federal question whether a tribal court has

4   exceeded the lawful limits of its jurisdiction, . . . exhaustion is required before such a claim may

5   be entertained by a federal court." Nat'l Farmers Union, 471 U.S. at 857   A federal court must

6   give the tribal court a full opportunity to determine its own jurisdiction, which includes

7   exhausting opportunities for appellate review in tribal courts.  Iowa Mut. Ins. Co. v. LaPlante,

8   480 U.S. 9, 16-17, 107 S.Ct. 971 (1987).

9          As set forth above, plaintiff filed two petitions for habeas corpus with the tribal

10  court seeking custody, plaintiff appealed to the Inter-Tribal Court of Appeals of Nevada (ITCAN)

11  which upheld the tribal court and plaintiff also filed a request for reconsideration with the

12  ITCAN that was denied.

13         Defendant argues that while plaintiff did file many appeals, she did not

14  specifically challenge the tribal court's jurisdiction until she sought reconsideration of an appeal.

15  Defendant argues that plaintiff has then failed to properly exhaust the jurisdiction claim.

16  Defendant states that the jurisdiction claim should have been brought before the tribal court and

17  not the ITCAN.  However, defendant sets forth no description on what is required to properly

18  exhaust administrative remedies and the undersigned is not familiar with the procedures of the

19  Washoe Tribe.

20         Regardless of the proper procedure to exhaust tribal court remedies, plaintiff has

21  sufficiently exhausted her claims.  In Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304 (2001), the

22  Supreme Court considered whether "petitioners were required to exhaust their jurisdictional

23  claims in Tribal Court before bringing them in Federal District Court."  Id. at 369.  The Court

24

25         [4] In order to guide plaintiff, the amended complaint should contain a separately labeled
    jurisdictional statement, facts applicable to all claims, and separately stated and labeled claims
26  which may contain any other facts not included in the general statement of facts which may be
    germane to the claims.  Plaintiff should be specific with respect to the relief requested.

9

noted that:

> In <u>National Farmers Union</u> we recognized exceptions to the exhaustion requirement, where 'an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, ... or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction'.... None of these exceptions seems applicable to this case, but we added a broader exception in Strate: '[w]hen ... it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by Montana's main rule, so the exhaustion requirement would serve no purpose other than delay.' 520 U.S. at 459–460, and n. 14, 117 S.Ct. 1404, 137 L.Ed.2d 661.  Though this exception too is technically inapplicable, the reasoning behind it is not.  Since it is clear, as we have discussed, that tribal courts lack jurisdiction over state officials for causes of action relating to their performance of official duties, adherence to the tribal exhaustion requirement in such cases 'would serve no purpose other than delay', and is therefore unnecessary.

<u>Id</u>.

While plaintiff did not raise a jurisdiction claim at each level, it is sufficient that she challenged the custody in several levels of the tribal court, as the tribal court would have examined its own jurisdiction.  "It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." <u>White v. Gittens</u>, 121 F.3d 803, 806 (1st Cir. 1997).  For plaintiff to return to tribal court to exhaust her tribal remedies with respect to the jurisdiction question would serve no other purpose than delay as described in <u>Hicks</u>.  Therefore, defendant's motion to dismiss for failure to exhaust tribal remedies should be denied.

*Sovereign Immunity*

Defendant asserts that the Washoe Tribe cannot be sued on account of sovereign immunity.  This may  be the case, and the Tribal Court may be the appropriate defendant as suggested by counsel for the Tribe, or individuals/tribal officials may be appropriate defendants, but that issue should not be finally decided prior to the filing of an amended complaint where we know what claims are actually being brought.

Assuming these Findings and Recommendations are adopted, plaintiff shall in

filing her amended complaint list as defendants those entities/persons appropriate to each claim.[5]

If the filing of an amended complaint is approved by the district judge, counsel for the Tribe shall file a statement within ten days of the filing of the amended complaint whether she will appear for those listed defendants and waive service.  Waiver of service *per se* would be without any prejudice to assertion of any non-service defenses/immunities.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss (Docket #14) be denied on grounds of lack of subject matter jurisdiction and exhaustion of tribal remedies, but be granted with leave to amend for failure to state a claim.  Any ruling on sovereign immunity is deferred.  Plaintiff shall file an amended complaint within 28 days of adoption of these Findings and Recommendations if such are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 8, 2011

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH: AB
fred0845.mtd

---

[5] The undersigned will also consider plaintiff's prior request for the appointment of counsel, after the district judge assigned to this case rules on these Findings and Recommendations.